[No. D036894. Fourth Dist., Div. One. Dec. 6, 2001.]

LEANA MARIA SAMBRANO, a Minor, etc., et al., Plaintiffs and Appellants, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

226

## COUNSEL

Law Offices of Terrence L. Butler, Terrence L. Butler and R. Scott Houtz for Plaintiffs and Appellants.

Casey Gwinn, City Attorney, Anita M. Noone and Shoshana Lazik, Deputy City Attorneys, for Defendants and Respondents.

## OPINION

**HUFFMAN, J.**—Plaintiff and appellant minor Leana Maria Sambrano, by her guardian ad litem Art Sambrano, et al., sued defendant and respondent City of San Diego (the City) for personal injuries suffered when she climbed into and was burned in a fire ring containing sand-covered hot coals at a beach park owned and operated by the City. In addition, Leana's relatives (mother and sisters) brought their own cause of action for negligent infliction of emotional distress.[1] The trial court granted summary judgment in favor of the City on the ground that, as a matter of law, the condition of the park fire ring was not a dangerous condition of public property. (Gov. Code, §§ 830, 830.2;[2] Code Civ. Proc., § 437c, subd. (c).) In reaching its conclusions, the court declined to rule upon the evidentiary objections asserted by the City, stating that, instead, the court relied only upon evidence that was competent and admissible. (*Biljac Associates v. First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1419 [267 Cal.Rptr. 819] (*Biljac*).) As we will discuss, although we agree with the trial court's ruling as a correct legal interpretation of section 830.2, we find cause for concern in the evidentiary approach allowed by *Biljac, supra,* 218 Cal.App.3d 1410, as inconsistent with standard rules of appellate review. We set forth these concerns and point out the advantages to the appellate courts when the trial courts issue rulings upon properly presented evidentiary objections. (Pt. I.B, *post.*)

Moreover, assuming for the sake of argument that a different conclusion could have been reached as a matter of law, depending on the evidentiary

[1] Plaintiffs Leana, her mother, Laurie Sambrano and her sisters, Ashley Marie and Stephanie Lynn Sambrano, by and through their guardian ad litem, Art Sambrano, also sued two other governmental entities on the same theories, but those defendants are not parties to this appeal. We refer to all plaintiffs collectively as Plaintiff.

[2] All statutory references are to this code unless otherwise stated.

status of the record if complete rulings had been duly made, we additionally hold there is no basis for City liability for a dangerous condition of public property under section 835 on either ground asserted by Plaintiff: (1) there was a negligent or wrongful act or omission of a City employee that created such a dangerous condition (§ 835, subd. (a)), or (2) due to actual or constructive notice provided to the City of the dangerous condition (§ 835, subd. (b)), there was sufficient time prior to the injury to allow measures to be taken to protect against it. Accordingly, we affirm the summary judgment on both related theories brought by Plaintiff.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts are essentially undisputed. Plaintiff Laurie Sambrano brought her daughters to a family reunion at the De Anza Cove beach park in Mission Bay, San Diego on August 14, 1999. Family members had arrived around 8:00 that morning and had staked out a fire ring on the beach sand by placing chairs, wood and toys there to show they intended to use it later. The fire "ring" was about five feet wide and consisted of six-inch thick concrete walls that extended above the sandy surface to a height of 15 inches. There was no active fire, only sand and ashes, visible within the fire ring.

After lunch, the youngest daughter, almost-two-year-old Leana Sambrano, was being watched by her 12-year-old sister and her great aunt while she swam and played. Leana was playing with her cousins on the sand about a foot or two away from the fire ring wall. Suddenly, those present heard screaming near the fire ring as Leana moved away from it. There were little footprints in the fire ring and Leana had third degree burns on her feet. She was treated and required skin grafts to heal the burns.

Evidence in the record showed that the City provided nine fire rings on the beach area at De Anza Cove, and also provided garbage can-style hot coal disposal containers near barbecue pits at the grassy areas of the park. There were signs at the three beach entrances and posted elsewhere warning that fires should be built within fire rings only. The signs stated, "Dispose of hot coals in fire rings. User must douse materials in fire container with water when done."

Fire ring containers at the park were built to specifications to avoid problems that had previously occurred when they were moved or rolled away. The fire rings had a four-foot-square interior fire compartment with a natural beach sand fire base. The exterior walls are five feet across and 15 inches high and were painted with red warnings stating "CAUTION, HOT."

Each ring weighs about 1,700 pounds. Two days before the incident, routine maintenance was performed on all the fire rings at the park. Such maintenance consists of using heavy equipment to lift and move the fire ring, compact and remove debris, and then replace the ring.

City lifeguards supervise the beach and sand areas. Lifeguards receive instructions to check fire rings for active fires and to check for fires outside of the fire rings. The lifeguard on duty the morning of the Sambrano family reunion testified that she checked the fire rings that morning and did not see any active fires. Lifeguards were provided with a "Mission Bay Update Summer 1999" sheet, which included the information, "Each station should have a yellow fire bucket, please use them each morning to cool down any illegal fires. The sand can stay hot for many hours and seriously burn young children, so please check your area carefully."

Lifeguard records showed that from April 1999 to September 1999, over 130,700 visitors used the De Anza Cove park, including many children. Lifeguards had not received any reports of similar incidents involving children being burned in fire rings at this park during the past five years. Plaintiff filed a tort claim and then this action.

The City answered Plaintiff's complaint and filed its motion for summary judgment, contending it was entitled to judgment as a matter of law because Plaintiff could not establish the fire ring was a dangerous condition of public property, and additionally, there should be design immunity. (Code Civ. Proc., § 437c.) The City supported its motion with photographs of the subject fire ring, signs, and surrounding areas, declarations by risk management and lifeguard personnel to authenticate the photographs, and an expert declaration by a safety engineer. This evidence explained the design of the fire rings was intended to address the problems the City had previously had with fire rings being small enough to move, or too small for the wooden pallets commonly used as fuel, or being subject to deterioration from heat damage.

Plaintiff opposed the motion, contending the signs instructing park users to dispose of hot coals in the fire rings were confusing because they did not instruct park users to douse the coals with water. However, patrons were told to douse coals placed in the fire containers near the grassy barbecue areas. Plaintiff argued the City should have had a policy requiring lifeguards to douse each of the fire rings with water at the beginning of morning lifeguard shifts. Plaintiff submitted an incident report from a state beach park in Carlsbad, California, stating that a small child who was dragging a boogie board behind him had tripped and fallen into a smoldering fire ring, sustaining burns. That incident occurred June 24, 1997.

The City reply papers objected to the state park incident report of June 24, 1997, objecting that it was hearsay, irrelevant, and lacked foundation. The City argued the undisputed facts left no room for a reasonable difference of opinion, and there was no dangerous condition as a matter of law. Moreover, Plaintiff had not shown the City employees breached a duty and thereby created a dangerous condition, or that the City had notice of the particular dangerous condition alleged.

At oral argument, Plaintiff's attorney claimed he had other evidence that there were 50 injuries a year from fire rings in the county, although he did not produce any such evidence. The evidentiary objections to the lone state park incident report were not discussed at oral argument. The trial court granted the City's motion, finding as a matter of law that the subject property was not in a dangerous condition at the time of the injury. The court declined to rule upon the evidentiary objections asserted by the City, stating that, instead, the court relied only upon evidence that was competent and admissible. (*Biljac, supra,* 218 Cal.App.3d at p. 1419.) In its ruling, the court cited section 830.2 and set forth the following reasoning: "The City has presented evidence that during the five years preceding this accident, no similar incidents involving children burned in fire rings at De Anza Cove were reported to Lifeguard Services personnel. Plaintiffs' evidence does not raise a triable issue of material fact in this regard. The evidence shows that the public was able to utilize the fire rings on the City beaches in general, and specifically at De Anza Cove, in a manner which did not create a substantial risk of the injury. [Citations.] Further, an exercise of due care at the beach requires supervision of children as young as Leana. With proper supervision, a small child will not be permitted to enter a fire ring even if it appears not to be 'active.' Coals, ashes, are all likely to be present in even a 'dormant' fire ring. Therefore, use of a beach with fire rings by small children requires proper supervision in order to exercise due care. The fact such an accident occurs does not equate to a legal determination that the subject property was in a dangerous condition. Rather, as here, the evidence can only support one reasonable interpretation: that the risk of a small child being burned in a fire ring at De Anza Cove is minor, insignificant or trivial in nature when the property is used with due care and in a reasonably foreseeable manner. [¶] In light of the above determination, it is immaterial whether the City did, did not or should have had a policy in place which requires a closer inspection of each fire ring at the beginning of each lifeguard's morning shift, or whether the signs posted created confusion as to the proper disposition of coals or of fires in general."

Judgment was entered accordingly and Plaintiff appealed.

## DISCUSSION

This matter reaches us after a defense summary judgment. ■ As recently stated by the Supreme Court in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 [107 Cal.Rptr.2d 841, 24 P.3d 493]: "Neither does summary judgment law in this state any longer require a defendant moving for summary judgment to conclusively negate an element of the plaintiff's cause of action. In this particular too, it now accords with federal law. All that the defendant need do is to 'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff. [Citation.] In others words, all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element X. Although he remains free to do so, the defendant need not himself conclusively negate any such element—for example, himself prove *not X*. This is in line with the purpose of the 1992 and 1993 amendments, which was to liberalize the granting of motions for summary judgment." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th 826, 853-854, fns. omitted.)

On appeal, Plaintiff attacks the summary judgment on two grounds. First, she argues the trial court erroneously ruled as a matter of law that section 830.2 applied and no dangerous condition was present. Secondly, she contends triable material issues of fact remain under section 835 regarding negligent or wrongful conduct by City employees, or regarding actual or constructive notice to the City of the existence of a dangerous condition, assuming there was one. We address these arguments separately, as well as the evidentiary concerns raised by this record.

## I

### *Section 830.2: "Minor, Trivial or Insignificant" Nature of Risk*

### A

### *Introduction*

A public entity may be liable for injuries caused by a dangerous condition of its property. (§ 835.) Under section 830, subdivision (a), a "dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

Section 830.2 provides a qualification to the definition of a dangerous condition of public property, by stating: "A condition is not a dangerous

condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition *created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."* (Italics added.)

■ "Whether property is in a dangerous condition often presents a question of fact, but summary judgment is appropriate if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines that no reasonable person would conclude the condition created a substantial risk of injury when such property is used with due care in a manner which is reasonably foreseeable that it would be used. (Gov. Code, § 830.2; [citations].)" *(Mathews v. City of Cerritos* (1992) 2 Cal.App.4th 1380, 1382 [4 Cal.Rptr.2d 16] *(Mathews).)*

■ In *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734 [139 Cal.Rptr. 876] *(Fielder)*, the court set forth a number of factors to be considered when a court makes a determination of whether a given condition of public property is minor or insignificant as a matter of law. The court should consider both the physical description of the condition, and "whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract [description] would indicate." *(Ibid.)* Where appropriate, the court should consider not only the intrinsic nature and quality of the condition, but also other factors such as the time and place of the occurrence. *(Ibid.)* "Furthermore, the court should see if there is any evidence that other persons have been injured on this same defect." *(Ibid.)*

B

*Evidentiary Problem*

■ At this point we reiterate that Plaintiff offered evidence in her opposition that at another public park, a small child had tripped and fallen into a smoldering fire ring and had been burned (incident report from a state beach, dated June 24, 1997). In its reply papers, the City objected to the incident report on the basis of hearsay, lack of relevance and foundation. (Evid. Code, § 1200, hearsay; § 702, lack of personal knowledge; § 1271, lack of foundation; §§ 210, 350, relevance; § 352.) The trial court declined to rule on the objections, citing the *Biljac* case which creates the legal fiction

that the trial court somehow, without ruling, discerned and relied upon only that evidence which was competent and admissible. (*Biljac, supra,* 218 Cal.App.3d at p. 1419.) Even though this approach has become common practice in the law and motion courts, in the case before us, it was important under the pertinent case law for the trial court here to give fuller consideration to the validity of the Plaintiff's attempt to show prior similar incidents. (*Fielder, supra,* 71 Cal.App.3d at p. 734.) Because it is not the function of an appellate court to make such evidentiary rulings in the first instance, we disagree with the approach set out in *Biljac, supra,* 218 Cal.App.3d 1410 to the extent it fosters the fiction that a trial court's failure to rule on evidentiary objections means the trial court has considered only admissible evidence. Rather, even in the summary judgment context, "Trial courts have a duty to rule on evidentiary objections." (*City of Long Beach v. Farmers & Merchants Bank of Long Beach* (2000) 81 Cal.App.4th 780, 784 [97 Cal.Rptr.2d 140] (*Long Beach*).) When that duty is not performed, appellate courts are left with the nebulous task of determining whether the ruling that was purportedly made was within the authority and discretion of the trial court and was correct. In our view, it was error for the trial court to omit to perform its duty to rule on evidentiary objections. We explain.

In *Biljac, supra,* 218 Cal.App.3d 1410, the Court of Appeal rejected a party's contention that it was reversible error for the trial court to decline to render formal rulings on evidentiary objections, instead finding that it was adequate for the trial judge to explain that while he found merit to some of the objections on both sides, he would disregard all inadmissible or incompetent evidence in issuing the ruling on the motion. The court disagreed with the objecting parties that express rulings are needed for appellate review so that the parties and the court may know what evidence was considered, stating, instead: "However, there is no use in such a procedure. We review summary judgments de novo [citation], and the parties remain free to press their admissibility arguments on appeal, the same as they did in the trial court. Also, being able to identify particular flaws in the lower court's reasoning has no value because, as appellants themselves note, summary judgment must be upheld if correct on any ground—regardless of wrong 'reasons' which may have guided the court. [Citation.] More generally, it is presumed on appeal that a judge has not relied on irrelevant or incompetent evidence. [Citation.] No error occurred." (*Id.* at pp. 1419-1420.)

Respectfully, we disagree with these views. In the first place, although summary judgments are reviewed de novo, this rule presupposes there is an established record on which appropriate legal conclusions can be drawn de novo. In the trial court, issue finding, not issue determination, is the pivot on which summary judgment turns. (*Mars v. Wedbush Morgan Securities, Inc.*

(1991) 231 Cal.App.3d 1608, 1613 [283 Cal.Rptr. 238].) Legal issues can be resolved on summary judgment only where there are no material disputed factual issues. (Code Civ. Proc., § 437c, subd. (c).) Also on appeal, the resolution of factual issues, whether new or overlooked, is not normally undertaken, and requires that certain procedures be followed. (Cal. Rules of Court, rule 23.)

Moreover, ruling on such evidentiary objections can involve a number of considerations more suited to the trial court than the appellate courts, including an exercise of discretion in establishing the record to be reviewed de novo. One of the objections raised here was Evidence Code section 352, that the matter was too remote. This is one of the principal situations in which the trial judge exercises discretion, such as the "exclusion of cumulative evidence, restriction of rebuttal evidence," etc. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 357 et seq., pp. 405-408.)

Another problem with the *Biljac, supra,* 218 Cal.App.3d 1410 approach is that the statement, "the parties remain free to press their admissibility arguments on appeal, the same as they did in the trial court" (*id.* at p. 1419) is necessarily subject to the waiver rule. As stated in *Long Beach, supra,* 81 Cal.App.4th at page 784, ordinarily, when a trial judge fails to rule on summary judgment/adjudication evidentiary objections, they are deemed waived. In such a procedural context, when no ruling was obtained, the Supreme Court has deemed evidentiary objections waived so that the objected-to evidence is considered to have been admitted into evidence as part of the record for purposes of the appeal. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1186, fn. 1 [91 Cal.Rptr.2d 35, 989 P.2d 121]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].) One clear exception to this rule is where it would have been a fruitless or idle act to continually interpose repeated requests for rulings; where this is so, written evidentiary objections may be deemed preserved for appellate review. (*Long Beach, supra,* 81 Cal.App.4th 780.) That approach seemingly transfers the evidentiary ruling job to the appellate court. This is not always a simple task, and not one suitable to this court, normally sitting as a three-judge panel committed to reviewing issues of law, not fact.

For example, had the City's objection to the Plaintiff's "other accident" evidence been fully considered by the trial court here, it would have been appropriate to consider the circumstantial evidence rule as stated by Witkin: "Where the circumstances are similar, and the happenings are not too remote in time, other accidents may be proved to show a defective or dangerous condition, knowledge or notice of it, or to establish the cause of an accident." (1 Witkin, Evidence (4th ed. 2000) Circumstantial Evidence, § 102,

p. 450.) The rule applies where the accidents are similar and occurred under substantially the same circumstances. (*Id.*, § 104, pp. 451-452.) "[S]ubstantial similarity is enough, for no two accidents happen in precisely the same way. [Citations.] . . . [¶] Moreover, the requirement of similarity may vary in strictness according to the purpose for which the evidence is introduced. Thus, if offered to show a dangerous condition of a particular thing . . . the other accident must be connected in some way with that thing; but if offered only to show knowledge or notice of a dangerous condition, an accident at the place—a·broader area—may be shown." (*Id.*, § 104, p. 452.)

In addition, hearsay and lack of foundation objections were raised. Although generally, accident and police reports are properly subject to such objections (see 1 Witkin, Evidence, *supra,* Hearsay, § 233, pp. 950-952; *id.,* § 239, pp. 956-957), in some cases, admissibility can be established, or an alternative official records theory of admissibility might apply. (*Id.*, § 244 et seq., pp. 962-969.) The trial court, as opposed to this court, would have been ideally suited to applying these and other applicable rules (e.g., Evid. Code, § 352) to the proffered state beach incident report, even though this was a summary judgment proceeding. (Code Civ. Proc., § 437c, subds. (b), (c); Cal. Rules of Court, rules 343, 345.)

As a further consideration, it appears that the evidence of "safety history" offered by the City (the lack of prior accidents over five years' use of the park) was proper. "[W]here the period of safe use is long or the experience is otherwise extensive, the trend is to admit this kind of negative evidence. [Citations.] [¶] . . . [¶] . . . Under Ev[idence] C[ode section] 351, making all relevant evidence admissible unless otherwise provided by statute [citation], it would seem clear that this evidence is admissible." (1 Witkin, Evidence, *supra,* Circumstantial Evidence, § 106, p. 454.) Plaintiff did not object to this evidence, except to say it was irrelevant and to offer the June 24, 1997 other-accident report. However, the record does not indicate whether any consideration was given to either the evidence or the objection. Under the *Biljac, supra,* 218 Cal.App.3d 1410 approach, we would deem a proper ruling was made, but what was it? Under *Ann M. v. Pacific Shopping Center, supra,* 6 Cal.4th 666, we would consider the evidence to be deemed admitted to the record on appeal, absent a ruling otherwise on the objections. Under *Long Beach, supra,* 81 Cal.App.4th 780, we could consider the objection preserved for appellate review, if it was pursued energetically enough (although it was not here).

Particularly since the City was allowed to bring in such evidence, it would have been proper as a procedural matter for the trial court to address the

validity of Plaintiff's evidence of the other accident report, as well as the City's objections to it. The vice of the *Biljac* approach is that it does not assist us in determining what record below was established, so that we as an appellate court may draw correct legal conclusions from that undisputed record. (*Biljac, supra,* 218 Cal.App.3d 1410.)

We also disagree with the statement in *Biljac,* that "being able to identify particular flaws in the lower court's reasoning has no value because, as appellants themselves note, summary judgment must be upheld if correct on any ground—regardless of wrong 'reasons' which may have guided the court. [Citation.]" (*Biljac, supra,* 218 Cal.App.3d at p. 1419.) It is a different thing to rely on incorrect reasoning, than it is to rely upon improperly admitted evidence, or to fail to consider relevant and admissible evidence.

Further, while *Biljac* is generally correct that "it is presumed on appeal that a judge has not relied on irrelevant or incompetent evidence," *Biljac* seems to allow the trial judge to arrogate to him—or herself the right to the benefit of this presumption, as a labor-saving device. Surely this is not the meaning of this rule of appellate practice. (*Biljac, supra,* 218 Cal.App.3d 1410.)

In any case, turning to the substance of Plaintiff's proffered evidence, we believe the City's objection was well taken. From our examination of the record, it appears that the June 24, 1997 state park incident was not shown to be sufficiently similar to be admissible circumstantial evidence, because that incident involved a small child who was dragging something that got caught behind him, so that he tripped and fell into a smoldering fire ring. The proffered report described the diameter of that fire ring as about 30 inches and its height as varying from three and one-fourth inches to six inches, with photos attached (not attached in this record.) The fire ring in this case was five feet across, with a four-foot-square interior space, and was not reported to be "smoldering." The available evidence does not indicate that this was a substantially similar incident to justify admissibility, and we will assume that was the case here. However, due to the trial court's reliance on *Biljac, supra,* 218 Cal.App.3d 1410, the problem remains: Is this evidence deemed to be part of the record because of the waiver rule, as in *Ann M., supra,* 6 Cal.4th 666? Or, alternatively, should we deem that the evidence was not considered on its merits, because that would have been the correct approach? With those questions in mind, we may return to the main issue here, whether a dangerous condition was shown as a matter of law under section 830.2.

## C

*Analysis: Dangerous Condition*

■ As the court explained in *Mathews, supra,* 2 Cal.App.4th 1380, with reference to section 830.2, "A condition is not dangerous within the meaning of the statute 'unless it creates a hazard to those who foreseeably will use the property . . . with due care. Thus, even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons.' [Citations.] Any property can be dangerous if used in a sufficiently abnormal manner; a public entity is required only to make its property safe for reasonably foreseeable careful use. [Citation.] [¶] Reasonably foreseeable use with due care, as an element in defining whether property is in a dangerous condition, refers to use by the public generally, not the contributory negligence of the particular plaintiff who comes before the court; the particular plaintiff's contributory negligence is a matter of defense. ■ Nevertheless, the plaintiff has the burden to establish that the condition is one which creates a hazard to persons who foreseeably would use the property with due care. [Citations.]" (*Mathews, supra,* 2 Cal.App.4th at p. 1384.) Moreover: "The statutory definition of reasonably foreseeable persons using the property with due care takes into consideration the lower standard of care which is expected of children." (*Id.* at p. 1385.)

Plaintiff argues the trial court's ruling missed several important points. First, she argues that the cases which acknowledge a lower standard of care is expected of children deal with older children. (*Mathews, supra,* 2 Cal.App.4th at p. 1385 [eight-year-old could recognize that riding a bicycle down a very steep, wet, grassy hill presents an obvious danger]; *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462 [72 Cal.Rptr.2d 464] [15 year old who climbed a freeway fence and was struck by a truck and injured was not acting reasonably or using due care under the circumstances]; *Dominguez v. Solano Irrigation Dist.* (1991) 228 Cal.App.3d 1098 [279 Cal.Rptr. 470] [public entities have no duty, as a matter of law, to prevent members of the public, such as children under 12, from climbing over walls and fences created to keep them out of dangerous areas].) These cases do not assist Plaintiff, since the trial court did not analyze this case in terms of a reasonable two-year-old. Rather, the trial court properly looked at all the circumstances as a whole, including the extended family supervision that Leana was receiving at the time of the accident.

Plaintiff next argues that even though there may have been a lack of due care on the part of those in charge of watching over Leana, the trial court

failed to recognize that a negligent use of public property will not relieve the public entity of liability for the condition of the property, where findings of dual negligence or dual causation could be possible. (*Murrell v. State of California ex rel. Department Public Works* (1975) 47 Cal.App.3d 264, 268-270 [120 Cal.Rptr. 812]; *Swaner v. City of Santa Monica* (1984) 150 Cal.App.3d 789, 802-806 [198 Cal.Rptr. 208] (*Swaner*).) Plaintiff takes the broad view that since it is readily foreseeable that small children will get into trouble with fire, the fire rings must be deemed to pose a substantial, not a minor or insignificant, risk of injury. Plaintiff relies on authority such as *Swaner,* in which the court explained: "A third party user's negligence may break the chain of causation between the maintenance of a dangerous condition by a public entity and the injuries suffered by a plaintiff. This would be the case if a third party user's negligence was unforeseeable. [Citations.] [¶] The third party's negligence, however, does not negate the existence of a 'dangerous condition.' In fact, if the third party's negligence or criminal conduct is foreseeable, such third party conduct may be the very risk which makes the public property dangerous when considered in conjunction with some particular feature of the public property . . . ." (*Swaner, supra,* 150 Cal.App.3d at p. 804.)

Plaintiff seems to be arguing that public property of this nature is per se dangerous because it is foreseeable that small children will not always be closely supervised by parents or other responsible relatives. We think that Plaintiff's view is unsupportable, because it amounts to an imposition of strict liability on public entities for the maintenance and use of fire rings. Such a view ignores the well-established principle that public entities are not insurers against injuries arising from minor or trivial defects. (*Fielder, supra,* 71 Cal.App.3d 719, 734.) Section 830.2 was implemented to include in this kind of liability determination a consideration of whether the condition created "a substantial risk of injury *when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.*" (Italics added.) Plaintiff would extend dangerous condition definitions to require public entities to assume no such use of recreational facilities with due care could ever occur.

Here, the trial court had before it evidence that Leana's extended family staked out the fire ring for later use by placing toys, chairs, and wood there to indicate it was for their use, presumably for an evening fire. They were doubtless aware similar groups of park patrons must have done the same the day before, and it was likely there were yesterday's fire remnants left over. The City provided fire rings to accommodate such uses to keep fires directly off the beach sand, because City residents value this kind of recreational use

of the beach area. The trial court also had evidence before it of the manner in which the fire rings were constructed, in order to avoid problems associated with fire rings being moved, overflowed, or destroyed by overuse. The floor of the fire containment area was beach sand, and in this case, the sand covered old hot coals. The accident occurred after lunch, and the fire ring had been claimed by the family since 8:00 that morning, when no fire was going. The trial court also had evidence that there had been no reports of similar injuries at De Anza Cove over the past five years, even though over 130,700 people had used the park this particular summer season, including families. From all these circumstances, it is not a reasonable conclusion that the inside of the fire rings constituted a hidden trap into which the burn victim fell, despite an exercise of due care.

We agree with the trial court that the only reasonable conclusion was that when the fire rings are used with due care by members of the public, they pose only a minor, insignificant, or trivial risk of injury. It is not proper to reason backwards to say that since Leana was seriously injured, there was a substantial risk of such injury attributable to the condition of public property. Rather, one of the circumstances that the trial court evaluated was the extent of supervision that Leana, as a two year old, was receiving at that moment. This was proper as a potential circumstance surrounding the accident which might have rendered the condition more dangerous, together with the physical description of the condition and the time and place of the occurrence. (*Fielder, supra,* 71 Cal.App.3d at p. 734.) "Furthermore, the court should see if there is any evidence that other persons have been injured on this same defect." (*Ibid.*)

With respect to the other injury evidence presented by Plaintiff of the state park fire ring incident of June 24, 1997, it could have been relevant under the *Fielder* theory, regarding other injuries on the same defect. (*Fielder, supra,* 71 Cal.App.3d 719.) Under *Ann M., supra,* 6 Cal.4th 666, since there was no clear ruling, the evidence would be deemed admitted, due to the City's failure to obtain a ruling on its objections. This could be deemed to create a triable issue of fact, which could require reversal. However, if the *Biljac* theory is accepted, the evidence was not admitted, and summary judgment should be upheld. We believe that is the only appropriate approach on this record. (*Biljac, supra,* 218 Cal.App.3d 1410.)

Although, as we have discussed above, a more complete evidentiary ruling would have been warranted, in this instance, the trial court properly applied the law to the record, as we deem it to have existed, to conclude there was no dangerous condition of public property as a matter of law. (§ 830.2.)

II

*Section 835: Conditions of Liability for Dangerous*
*Condition of Public Property*

■   Although we have concluded above that under section 830.2, the fire rings did not constitute a dangerous condition of public property, in an abundance of caution, we also address Plaintiff's alternative arguments that such a dangerous condition existed within the meaning of section 835. In addressing the conditions of liability for a dangerous condition of public property, section 835 generally requires the plaintiff to establish the property was in a dangerous condition at the time of the injury, the injury was proximately caused by the dangerous condition, and the dangerous condition created a reasonably foreseeable risk of the kind of injury that was incurred. Furthermore, the plaintiff must show either that:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835.)

Plaintiff seeks to invoke section 835, subdivision (a), by contending that City employees were negligent and created the dangerous condition, because the City should have had a policy requiring lifeguards to douse each of the fire rings with water at the beginning of morning lifeguard shifts. Plaintiff also appears to contend the signs instructing park users to dispose of hot coals in the fire rings were confusing, as to whether park users should douse coals with water if they were in the fire ring, or only if they had been placed in the garbage can-style fire containers near the grassy barbecue areas.

With respect to section 835, subdivision (b), Plaintiff argues City lifeguards knew that people erroneously attempt to douse fires by covering them with sand, but the sand retains heat from the fires, and such heat cannot be detected without a manual check of each fire ring. Since City lifeguards were given a "Mission Bay Update Summer 1999" sheet, stating that children could be burned by hidden coals left by illegal fires, Plaintiff contends the City should have had a policy in place to have employees douse each fire

ring with water at the beginning of every lifeguard's shift every morning, since the City was on notice of such a hazard.

The trial court did not find it necessary to rule upon these contentions, stating that they were immaterial in light of the rest of the ruling. In any case, they lack merit. Plaintiff did not succeed in creating triable material issues of fact on these two points, because she could not show there was a dangerous condition in the nature of a hidden fire trap that could not be used with due care, created by a negligent or wrongful act or omission of a City employee within the scope of his or her employment. The City acted reasonably in setting forth its policies to deal with illegal fires, and the lifeguards in question complied with all of those policies, as was undisputed. This was not an illegal fire, but instead was one that was consistent with legal and foreseeable use of the fire ring, which if used with reasonable care would not proximately cause such an injury. (§ 835, subd. (a).)

Further, under section 835, subdivision (b), Plaintiff's attempts fail to show the City was on notice of the dangerous condition and could have taken measures to protect against it, because the undisputed evidence was that during the past five years, there had not been any reports of such injuries. The City was on notice of other types of problems with the fire rings, and redesigned them to accommodate those concerns (being moved, being overfilled, or deteriorating from heat). Plaintiff does not show the City had particular notice that a small child would sit too close to the fire ring and climb into it, such that it should have taken measures to avoid such a problem.

Finally, the evidence of "safety history" offered by the City (the lack of prior accidents over five years' use of the park) was relevant to the definition of a dangerous condition under section 830, subdivision (a), as to the existence of "a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a); see 1 Witkin, Evidence, *supra,* Circumstantial Evidence, § 106, p. 454; 2 Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th. ed. 2001) § 12.20, pp. 774-777.) Although, as noted above, there was evidence of another, allegedly similar, accident offered by Plaintiff, the record does not demonstrate the admissibility of such evidence based on substantially similar circumstances. Conceivably, such evidence of truly similar accidents could have created triable issues to defeat summary judgment. Here, however, although the matter should have been more fully addressed, based on the applicable case law, we believe the

trial court's omission to rule was harmless. Summary judgment was properly granted to the City on the complaint as a whole.

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and O'Rourke, J., concurred.