Filed 1/21/21  Wasserman v. Lustigson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| RANDALL WASSERMAN,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALAN LUSTIGSON,<br><br>    Defendant and Appellant. | D076048<br><br><br>(Super. Ct. No. 37-2018-00058732-CU-DF-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Reversed and remanded with directions.

Kiamilev Law Group, Chandra Kiamilev and Richard M. Payne for Defendant and Appellant.

James D. Crosby for Plaintiff and Respondent.


Plaintiff Randall Wasserman filed a complaint against defendant Alan Lustigson, alleging one cause of action for defamation.  Lustigson appeals from the trial court's order denying his special motion to strike the complaint

under California's anti-SLAPP statute,[1] Code of Civil Procedure section 425.16 (section 425.16). The court denied the motion, because the complaint alleged two defamatory posts on an Internet website, but Lustigson only addressed one post in his motion.

The trial court erred. As we explain, Lustigson was entitled to rely on the complaint's allegation of the contents of the purportedly defamatory posts for purposes of attempting to establish that the challenged claim arose from activity protected by the anti-SLAPP statute. Contrary to the court's ruling, Lustigson was not required to produce each of the posts in order to argue that the complaint was subject to the anti-SLAPP statute. His motion relied on the allegations in the complaint and the evidence he submitted in support, and the court erred in ruling that he had not made a sufficient showing to reach the merits of the motion. Thus, we will reverse the order denying Lustigson's anti-SLAPP motion.

Although the standard of review is de novo, we are unable to reach the merits of the issues raised in the anti-SLAPP motion, because we have an incomplete record. Lustigson filed, and Wasserman opposed, a request for judicial notice; and Wasserman filed, and Lustigson responded to, evidentiary objections; yet the court expressly declined to rule on both. Under these circumstances, the parties did not waive or forfeit the evidentiary issues they presented. Thus, we will remand for the court first to rule on the evidentiary issues and then, based on the evidence properly before the court, to rule on the merits of Lustigson's anti-SLAPP motion.

---

[1]     " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).)

## I. UNDERLYING LEGAL STANDARDS

Section 425.16, subdivision (b)(1) provides in full: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The anti-SLAPP statute "shall be construed broadly." (§ 425.16, subd. (a).)

In applying this statute, a court generally is required to engage in a two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral, supra,* 1 Cal.5th at p. 384.) "If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Ibid.*) " 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

A " 'cause of action . . . aris[es] from' " protected conduct under section 425.16, subdivision (b)(1), when it is "based on" such conduct. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*City of Cotati*).) A defendant meets the burden of demonstrating that the plaintiff's cause of action (or claim) is based on protected conduct, if it " 'fits one of the [four] categories spelled out in section 425.16, subdivision (e).' " (*City of Cotati*, at p. 78.) In the present case, Lustigson contends that the conduct alleged by Wasserman is protected under subdivision (e)(3), which defines an act in furtherance of a

3

constitutional right of free speech in connection with a public issue to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) Thus, under section 425.16, subdivision (e)(3), when deciding whether the alleged conduct is protected for purposes of prong one, the court must determine two issues: (1) whether the statement or writing was "made in a place open to the public or a public forum"; and (2) whether the statement or writing was "made . . . in connection with an issue of public interest."

"We review de novo the grant or denial of an anti-SLAPP motion. . . . We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. . . . In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*), citations omitted.) With regard to the admissibility of evidence, because "[w]e review the superior court's evidentiary rulings for abuse of discretion . . . , we will not overturn such a ruling on appeal 'unless "the trial court exceeded the bounds of reason, all of the circumstances before it being considered." ' " (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 255 [review of trial court ruling sustaining evidentiary objections] (*Ralphs Grocery*); accord, *Physicians Committee for Responsible Medicine v. Los Angeles Unified School Dist.* (2019) 43 Cal.App.5th 175, 182 ["We review judicial notice rulings for abuse of discretion"] (*Physicians Committee*).)

4

## II. STATEMENT OF THE CASE[2]

In November 2018, Wasserman filed the underlying complaint, in which he asserts one cause of action for defamation (libel per se[3]) against his former employee, Lustigson. As background to the defamatory statements, Wasserman alleges that, in 2011, he hired Lustigson as the chief operating officer of three companies he (Wasserman) owned and operated. The complaint further alleges that, in June 2016, Wasserman terminated Lustigson's employment, and Lustigson "vowed to 'Take Wasserman and the company down.'" To this end, paragraph 17 of Wasserman's complaint alleges:

> "[O]n November 21, 2017, defendants Lustigson and Does 1 through 25, inclusive, posted to a public website entitled 'Pissed Consumer' *two false and defamatory postings concerning plaintiff.* Said defamatory postings included, among things, the following false and defamatory statements:
>
> "- that plaintiff is a 'fraud';
>
> "- that plaintiff 'stole funds and defrauded investors';
>
> "- that plaintiff 'stole money';
>
> "- that plaintiff 'has run off with millions of dollars from investors';

---

[2] At all times during the litigation, Wasserman and Lustigson were represented by counsel. In the text, we refer only to the parties. We rely on context to establish whether we are referring to the party or to his attorney.

[3] Libel per se is defined at Civil Code section 45a, which provides in part: "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof."

"- that plaintiff 'defrauded the banking system';

"- that plaintiff 'steals and cheats others';

"- that plaintiff should be 'put behind bars for cheating people'; and,

"- that plaintiff's life coaching business is 'absolutely FRAUD'." (*Sic.*) (Italics added.)

In response to the complaint, Lustigson filed an anti-SLAPP motion. Consistent with the requirements of the anti-SLAPP statute (§ 425.16, subds. (b)(1), (e)(3); see pt. I., *ante*), Lustigson argued both that "the statements at issue" were free speech in connection with a public issue (because they "were made in a public forum and pertained to a matter of public interest") and that Wasserman could not establish a probability that he would prevail on "the entire cause of action." In support of his motion, Lustigson filed a memorandum of points and authorities, two declarations (one from him and one from his attorney), an amended notice of lodgment of four exhibits, and a request for judicial notice of three of the lodged exhibits. Lustigson included as exhibit A, a copy of what he believed was one of the posts from the Internet website. He testified that, although he had nothing to do with the original post, he did submit an online comment to the post.

Wasserman opposed the anti-SLAPP motion. Prior to presenting his position regarding whether Lustigson met his initial burden under prong one, Wasserman presented an argument on which the trial court ultimately based its ruling. According to Wasserman, Lustigson's motion was deficient, because the complaint alleged *two* defamatory posts, but Lustigson "only consider[ed] <u>one</u> of those posts in his motion." In support of his opposition, Wasserman filed a memorandum of points and authorities, his declaration, a notice of lodgment of seven exhibits, an opposition to Lustigson's request for judicial notice of each of the three lodged exhibits, and four evidentiary

6

objections to Lustigson's declaration. Wasserman included as exhibit E a copy of the Internet website post that is at issue, but that Lustigson had not submitted.

Lustigson replied, responding to the arguments both on the merits and on the perceived deficiency in his initial presentation. In support, he filed a memorandum of points and authorities, a declaration, a reply to Wasserman's opposition to the request for judicial notice, and responses to Wasserman's evidentiary objections to Lustigson's original declaration.

During the hearing on the anti-SLAPP motion, when Lustigson referred to the evidence in support of the anti-SLAPP motion regarding the website alleged in the complaint, the court did not allow Lustigson to finish his statement, stating, "You haven't made a request for judicial notice. You haven't put the evidence in front of me in that regard."[4] Later during the argument, as Lustigson described the website as "a public consumer review board" where "[t]here are public comments about [Wasserman]," the court asked, "Where is the evidence of what this is?" When Lustigson responded (by referring the court to exhibit B in support of the motion[5]), Wasserman

---

[4] Without citing authority, Lustigson later suggested to the court that, "in the context of anti-SLAPP [proceedings,] it is well established that the court may take judicial notice of websites and blogs we've cited to."

[5] Lodged exhibit B to Lustigson's anti-SLAPP motion consists of what counsel testified were "true and correct copies of [three] pages from the Pissedconsumer.com website." One page is entitled "About us" and describes in more detail how, since 2006, the website "has been one of the leading consumer advocacy websites," posting "reviews [that] give consumers an opportunity to learn more about various industries, companies and brands"; one page contains the website's statistics, reflecting 1.1 million "consumer reviews," 67,000 "companies reviewed," and 3.5 million "monthly visitors" (capitalization omitted); and one page explains how to post on the website

objected ("That's hearsay, your Honor"), to which the court stated: "You didn't make an objection." Wasserman reminded the court that he timely had objected in writing, and Lustigson reminded the court that he timely had responded in writing to the objection. At the conclusion of the hearing, the court denied Lustigson's request for supplemental briefing and took the matter under submission.[6]

The court later filed an order denying Lustigson's motion. *Before* the page and a half of "Background" and "Discussion," the court ruled as follows as a "*Preliminary Matter*[ ]": "In light of the ruling [below], it is unnecessary to rule on the request for judicial notice or evidentiary objections." In the "Discussion," citing Lustigson's declaration in support of the motion, the court explained that, although the complaint alleged "two defamatory posts[, Lustigson's] moving papers only address[ed] one allegedly defamatory post." Because Lustigson's anti-SLAPP motion was directed to the entire complaint but contained evidence of only the one post, the trial court ruled that Lustigson's motion necessarily failed. (Citing *Baral*, *supra*, 1 Cal.5th at p. 396 [anti-SLAPP procedure may be used to eliminate *part* of a cause of action or complaint].)

Lustigson timely appealed from the order denying his anti-SLAPP motion. (Code Civ. Proc., §§ 904.1, subd. (a)(13), 425.16, subd. (i).)

---

(with the introduction that "PissedConsumer.com is a platform where you can be heard and helped").

[6] At the hearing, the court denied Lustigson's request to provide either supplemental briefing or additional evidence in response to Wasserman having provided a copy of the second post. Lustigson raises no issue on appeal as to the trial court's denial of his request to provide supplemental briefing or evidence.

8

III. DISCUSSION

On appeal, the parties repeat most of the same arguments they presented to the trial court on the following issues: whether Lustigson's presentation allowed the court to reach the merits; and, if so, whether the parties met their respective burdens under the anti-SLAPP statute. As we explain, the trial court erred in denying Lustigson's motion on the basis that he directed it to *both* posts, but only presented evidence and argument of what was contained in *one* of the posts. The exact language used in each post is not necessary to reach and determine the substantive issues raised in Lustigson's anti-SLAPP motion.

As we further explain, we cannot reach the merits despite our de novo review. By failing to rule on both Lustigson's opposed request for judicial notice and Wasserman's evidentiary objections to Lustigson's declaration, the trial court has left us (and the parties) unable to determine whether the ruling was within the court's legal authority and, if so, whether it was correct. Thus, without the trial court's exercise of discretion in determining what evidence to consider, we have no choice but to remand for further proceedings.

A. *The Trial Court Erred*

For purposes of the application of the anti-SLAPP statute, section 425.16, subdivision (b)(1) does not define "cause of action." (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 646.) In fact, section 425.16 uses the term " 'cause of action' " interchangeably with the words " 'claim' " (§ 425.16, subd. (b)(3)), " 'complaint' " (§ 425.16, subd. (f)), " 'action' " (§ 425.16, subd. (c)(1)), and the phrase " 'the facts upon which the liability or defense is based' " (§ 425.16, subd. (b)(2)). (*Thomas*, at p. 646.) "Section 425.16 is not concerned with how a complaint is framed, or how the primary right theory

9

might define a cause of action"; section 425.16, subdivision (b)(1) "target[s] . . . claims that are based on the conduct protected by the statute." (*Baral*, *supra*, 1 Cal.5th at p. 382.) Thus, a section 425.16 motion may be directed to all or part of a complaint or cause of action. (See *Baral*, at pp. 392 [anti-SLAPP motion may "reach distinct claims within pleaded counts"], 393 ["an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded"], 394 ["motions to strike [are] . . . a way of challenging particular allegations within a pleading"].)

According to the trial court's ruling: Wasserman's complaint contained only *one* cause of action, and it alleged "*two* false and defamatory postings concerning [Wasserman]" on the public website; Lustigson's anti-SLAPP motion was directed to "the Defamation *cause of action* . . . , as well as the *entire* complaint as it contains only *one* cause of action"; yet, "[Lustigson's] moving papers only address[ed] *one* allegedly defamatory post." (Italics added.) The court based its ruling on the fact that, in support of his anti-SLAPP motion, Lustigson included as an exhibit a copy of only *one* of the allegedly defamatory posts from the website. This is where the court erred.

For prong one purposes, in determining whether a cause of action arises from the defendant's constitutional right of petition or free speech, "a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*City of Cotati*, *supra*, 29 Cal.4th at p. 79, quoting § 425.16, subd. (b)(2).) These documents necessarily include the complaint here, since that is the only document which " 'state[s] the facts upon which the liability . . . is based.' " (*Ibid*.) In fact, given Lustigson's uncontradicted declaration testimony that he did not write, provide assistance in writing, or direct someone else to write

10

either of the posts alleged in the complaint, the statements alleged at paragraph 17 are the only potential source of the alleged libel.

Lustigson, who Wasserman accuses of defaming him, has no duty or obligation to put before the court the defamatory language that *Wasserman* alleges to be libelous.[7]  The exact words of the posts may need to be known in prong two—where *Wasserman*, the plaintiff, has the burden of establishing a probability of success.  However, because he filed the action and alleged the defamatory posts, Wasserman knows what they say; and, in fact, he presented evidence of the second post (ex. E) in his effort to meet his responsive (prong two) burden of establishing a prima facie case of defamation.

Very simply "a defendant [like Lustigson here] who denies engaging in the alleged conduct 'may rely on *the plaintiff's allegations alone*' in assessing whether the conduct at issue is protected activity." (*Abir Cohen*, *supra*, 40 Cal.App.5th at p. 888, italics added, quoting *Bel Air Internet*, *supra*, 20 Cal.App.5th at p. 929.)  "That is because it is '[the] plaintiff's complaint [that] ultimately defines the contours of the claims.' ([*Bel Air Internet*,] at p. 936.) Not allowing the defendant to rely on the allegations alone . . . 'would have the perverse effect of making anti-SLAPP relief unavailable when a plaintiff alleges a baseless claim, which is precisely the kind of claim that [the anti-SLAPP law] was intended to address.' " (*Abir Cohen*, at p. 888, quoting *Bel*

---

7    This is especially true where, as here, the plaintiff does not include the specific language in the complaint, and the defendant denies having written (or, as in the present case, posted) the allegedly offensive language.  (See text, *post*, citing and quoting *Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 888 (*Abir Cohen*); *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 929 (*Bel Air Internet*).)

*Air Internet*, at p. 929.)[8]  To the extent Lustigson relied on other "pleadings, and supporting and opposing affidavits" (§ 425.16, subd. (b)(2)), he did so in his attempt to establish *why* the activity is protected, not *what* the activity communicated.  (See *Bel Air Internet*, at p. 936 [in attempting to establish that "the complaint itself shows that a claim arises from protected conduct," the defendant may "supplement[ ]" its showing with facts from evidence submitted by the parties].)

In his anti-SLAPP motion and supporting points and authorities on prong one, Lustigson consistently refers to the "statement*s*" (plural) that were posted on the website.  (Italics added.) Thus, contrary to the trial court's ruling, Lustigson's "moving papers" did not "only address one allegedly defamatory post."  To the extent his points and authorities refer to the evidence of the post he submitted (ex. A), Lustigson did not rely on the post for purposes of establishing what was said.  Rather, Lustigson relied on that evidence to establish his prong one contention under section 425.16, subdivision (e)(3) that the website was a public forum in which members of the public exchanged statements on issues of public interest.[9]

---

[8]  In response to Wasserman's argument in the trial court, Lustigson cited and discussed *Bel Air Internet*, *supra*, 20 Cal.App.5th 924, in some detail.  Likewise, at the hearing on the anti-SLAPP motion, Lustigson argued that, under the *Bel Air Internet* opinion, he was entitled to rely on the allegations in the complaint.  Consistently, in his opening brief in this court, Lustigson also cited and discussed the *Bel Air Internet* opinion.  Wasserman ignored this authority and the reasoning it employs in the trial court and does so again on appeal.

[9]  For example, when Lustigson submitted the one post (ex. A), he acknowledged that *he* and another person added comments to the allegedly offending post.  On appeal, Lustigson contends that, together, the post and

12

By requiring Lustigson to have submitted a copy of the second post alleged by Wasserman in the complaint, the court placed a burden on Lustigson that is not required under the anti-SLAPP statute or case law. We are not saying that Lustigson met his prong one burden, only that, contrary to the trial court's ruling, *Lustigson* was not required to submit detailed evidence *of what Wasserman generally alleged* was said in the second post. Denying any knowledge of the second post, Lustigson had no choice but to attempt to establish that the second post was protected conduct for anti-SLAPP purposes from the allegations in the complaint.

By contrast, the merits of Wasserman's claims—for which *Wasserman* would have to produce evidence of what was said in both posts alleged in his complaint—"should play no part in the first step of the anti-SLAPP analysis." (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 371.) "The first step only determines whether section 425.16's *procedural* protection applies; the second step of the analysis addresses whether there is sufficient merit to the claims at issue to allow the litigation to proceed." (*Ibid*.)

In short, in the prong one analysis, the moving defendant need not establish that the plaintiff violated or chilled a constitutional right, only that the plaintiff's action *arises from* the defendant's constitutionally protected petitioning or free speech activity. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; *City of Cotati, supra*, 29 Cal.4th at pp. 75-76.)

For the foregoing reasons, the trial court erred in denying Lustigson's anti-SLAPP motion on the basis that "[Wasserman's] complaint here alleges

---

comments constitute evidence that the allegedly offending post "started an open discussion on the website."

[Lustigson] made two defamatory posts," but "[Lustigson's] moving papers only address one allegedly defamatory post."

B.    *Remand of the Case for Further Proceedings*

Although we review the trial court's ruling de novo, we must remand for further proceedings rather than reaching the merits of Lustigson's motion.  Very simply, in our de novo review, we are unable to apply the requisite legal standard (on either prong), since we do not know what evidence is in the record.

Lustigson requested that the court take judicial notice of three lodged exhibits, Wasserman filed written opposition, and Lustigson replied to the opposition.  In addition, Wasserman filed written objections to four paragraphs of Lustigson's declaration testimony, and Lustigson filed a written response.  Despite this record, at the hearing on the motion, the court was unaware of either the request for judicial notice or the evidentiary objections; and when issuing its ruling, the court expressly declined to rule on the request or the objections.

As a general rule, where a party files a written request for judicial notice (or an objection to such a request) or a written objection to evidence (or a reply to such an objection) and the court fails to rule, the request or objection is deemed forfeited.  (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 306, fn. 4 [evidentiary objections; anti-SLAPP appeal]; *Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 744 [burden on party seeking judicial notice; demurrer appeal].)  In the present case, however, we decline to find a waiver or forfeiture.  The parties here provided the court with timely detailed written statements requesting rulings, and they could not press the court for rulings, since the court issued its written ruling after the matter was submitted.  Moreover, and most persuasively, this is not an instance

14

where the court forgot about the issues; to the contrary, in the first sentence of the court's order, the court acknowledged the request for judicial notice and the evidentiary objections and expressly declined to rule on them.

Despite our de novo review of the merits of an order granting or denying an anti-SLAPP motion (*Park*, *supra*, 2 Cal.5th at p. 1067), we do not have that independence for most evidentiary issues, where we must review *decisions already made* for an abuse of discretion (e.g., *Ralphs Grocery*, *supra*, 17 Cal.App.5th at p. 255 [evidentiary objections]; *Physicians Committee*, *supra*, 43 Cal.App.5th at p. 182 [request for judicial notice]). Because these types of evidentiary rulings "involve an exercise of discretion, . . . it is the trial court's responsibility to rule on the objections in the first instance." (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1348.) "The trial court must rule on written evidentiary objections made prior to and oral objections made at the hearing on a motion." (*Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 630 [anti-SLAPP appeal].) " 'When that duty is not performed, appellate courts are left with the nebulous task of determining whether the ruling that was purportedly made was within the authority and discretion of the trial court and was correct.' " (*Ibid.*, quoting *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 235 ["it was error for the trial court to omit to perform its duty to rule on evidentiary objections"].) Accordingly, on remand, the court first should rule on Lustigson's request for judicial notice and Wasserman's evidentiary objections to Lustigson's declaration. The court then should consider the

parties' positions on the merits and rule on Lustigson's anti-SLAPP motion.[10]

## IV.  DISPOSITION

The order denying Lustigson's anti-SLAPP motion is reversed.  The matter is remanded to the trial court with the following directions:  First, the court should rule on Lustigson's request for judicial notice and Wasserman's objections to evidence; and, second, based on the evidence properly before the court and the arguments already presented in the parties' briefing, rule on the merits of Lustigson's motion.  Lustigson is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, Acting P. J.

WE CONCUR:


DATO, J.


GUERRERO, J.

---

[10]    We express no view as to how the court should rule on any of the issues in the remanded proceedings.

16