Filed 5/12/23  Lech v. City of Carlsbad CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| DIANE LECH, | D080320 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00042305-CU-PO-NC) |
| CITY OF CARLSBAD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Reversed.

Jennifer Martinez, for Plaintiff and Appellant.

Dean Gazzo Roistacher and Lee H. Roistacher; Cindie K. McMahon, City Attorney, for Defendant and Respondent.

Plaintiff and appellant Diane Lech sued defendant and respondent City of Carlsbad (City) for allegedly maintaining a dangerous condition of public property after she tripped on a sidewalk having an approximately one and one-eighth inch uplift.  City successfully moved for summary judgment on grounds the sidewalk uplift was trivial as a matter of law.  On appeal, Lech contends the trial court erred by its ruling.  Specifically, Lech contends that

while the court considered admissible evidence concerning factors relevant to the trivial defect inquiry, it erred by weighing that evidence and moving into the trier of fact's role.

Though Lech improperly focuses her contentions on the trial court's reasoning, which we disregard on review of a summary judgment, our de novo review convinces us that a jury must decide the question of whether the sidewalk defect in this case is trivial or dangerous. Reasonable minds could differ on whether the sidewalk defect here, a clean uplift of greater than one inch spanning the sidewalk's entire width, which at the time of the accident was mostly covered by a nearby tree's shadows, posed a substantial risk of injury to a pedestrian exercising due care. Accordingly, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2020 at about 12:45 p.m., Lech was walking with her then fiancé on a sidewalk on Tamarack Avenue and Simsbury Court when she tripped on a raised concrete panel and fell. The sidewalk panel's height differential was approximately 1.125 inches; photographs taken at the time of the accident show it was a clean elevation that spanned the entire walkway. Because it was a sunny day, a tree in the landscaped area adjacent to the sidewalk cast shadows in the area of the sidewalk condition, making it difficult to see. Lech had hiked "hundreds, if not thousands" of miles on trails three to four times a week for exercise, but because her normal hiking trail was closed, she went for a walk on Tamarack Avenue for the first time. At the time, Lech was looking forward. She was sure she was scanning ahead of the ground where she was walking, as she did while hiking trails. But she did not see the unmarked, raised sidewalk panel. A homeowners association (association) owns and maintains the landscaping adjacent to the location

2

where Lech fell, and it had never received complaints about the area before the incident. City owns and maintains the sidewalk.

Lech sued City for maintaining the uneven sidewalk, which she alleged was a dangerous condition of public property. She also sued the association for negligence in maintaining the location and surrounding vegetation.

City moved for summary judgment. It argued no dangerous condition existed because the sidewalk's condition was a minor, trivial or insignificant defect as a matter of law, and no aggravating circumstances rendered the height differential dangerous. City also argued Lech could not demonstrate it created the raised sidewalk condition or that it had actual or constructive notice of the raised concrete panel, entitling it to summary judgment. It presented evidence that in the prior seven years, it had not received any service requests, citizen complaints, or complaints from the association related to the condition of the sidewalk at Tamarack Avenue and Simsbury Court. City presented evidence that it had not received any claims or lawsuits regarding slip and falls on an uneven sidewalk in that location.

Lech opposed the motion.[1] She lodged objections to some of City's evidence. She presented evidence from a person most knowledgeable about City's sidewalks that City's "best practice" or "general practice" giving rise to safety concerns were sidewalks with lifts or height differentials of three-quarters of an inch.

---

[1] Lech's opposing points and authorities are not in the appellate record. The association also opposed City's motion. In its opposition, the association argued City had actual and constructive notice of issues with tree roots affecting the sidewalk in the area of the incident. The association, however, agreed with City that the sidewalk defect was trivial as a matter of law. On Lech's objection, the court declined to consider the latter portion of the association's briefing as lacking the requisite notice for bringing a summary judgment motion.

The trial court granted summary judgment. Sustaining some of the parties' evidentiary objections, it ruled based on the size of the defect that City had met its initial summary judgment burden to establish the defect was trivial. The court acknowledged that the size of a sidewalk defect was not the only factor to be considered in the trivial defect analysis, but it ruled Lech had not demonstrated evidence of other factors sufficient to show that the totality of the circumstances presented more than a trivial defect. The court reasoned: "[E]ven though the height of the crack was such that the City has met its initial burden of establishing, for purposes of summary judgment, that the defect was trivial, [Lech] still ha[d] an opportunity to show evidence of additional facts or circumstances that make the defect in question non-trivial. . . . Indeed, it is possible that even a much smaller crack size could present a 'dangerous condition' if other factors warranted. For example, even a smaller crack, if located in crevice where water routinely pooled, might be prone to being 'hidden' from view such that the inability to perceive the condition might significantly increase the foreseeable risk of danger that it posed. As another example, a crack might be located on a particular slope that rendered it difficult to perceive. It could be located near something particularly dangerous like a ledge or precipice, or it could be located on terrain that is much more commonly traversed at night such that it was foreseeable that the crack, when most often used, would not be visible. All of these examples demonstrate how even a smaller crack might, given the right external factors or 'total circumstances,' be non-trivial." The court concluded Lech did not establish such additional facts or circumstances: "In an effort to meet this standard, [Lech] argue[s] that: [¶] (1) the defect existed for at least a year prior to the incident[;] [¶] (2) the City itself has a policy of fixing sidewalk cracks once they reach three-quarters of an inch[;] [¶] (3) Plaintiff

4

herself was unfamiliar with the terrain[;] [¶] [and] (4) . . . the crack itself was obscured by the shade of the nearby trees[.] [¶] None of these factors are persuasive, and none demonstrate a triable issue of material fact on the issue of whether the defect in question was 'trivial.' "

Lech filed this appeal from the ensuing judgment.

DISCUSSION

I. *Summary Judgment Principles and Standard of Review*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) But "[s]ummary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

A defendant moving for summary judgment meets its burden of showing that a cause of action has no merit if the defendant has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(1).) "Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (*Id*., subd. (p)(2).)

" 'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts

5

about the evidence resolved in favor of the party opposing the motion."
(*Regents of University of California v. Superior Court, supra,* 4 Cal.5th at
p. 618; see also *Weiss v. People ex rel. Department of Transportation* (2020) 9
Cal.5th 840, 864 ["Courts deciding motions for summary judgment or
summary adjudication may not weigh the evidence but must instead view it
in the light most favorable to the opposing party and draw all reasonable
inferences in favor of that party"].

Despite that review standard, we presume the judgment is correct and
the appellant still bears the burden of demonstrating error. (*Jones v.
Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367,
1376; *Go Tek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th
1240, 1245 [" 'appellant has the burden of showing error, even if [s]he did not
bear the burden in the trial court' "]; *Tubbs v. Berkowitz* (2020) 47
Cal.App.5th 548, 554.) " 'We are not bound by the [trial] court's stated
reasons for its summary judgment ruling; rather, we examine the facts before
the trial court then independently determine their effect as a matter of law.' "
(*Basurto v. Imperial Irrigation District* (2012) 211 Cal.App.4th 866, 877; see
also *Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1103 (*Huckey*)
[appellate court reviews the trial court's ruling, not its rationale].)

## II. *Legal Principles*

City's liability is governed by the Government Claims Act (at times, the
Act). (See *Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1105.)
"Section 835 [of the Act] prescribes the conditions under which a public entity
may be held liable for injuries caused by a dangerous condition of public
property. [Citation.] [It] provides that a public entity may be held liable for
such injuries 'if the plaintiff establishes that the property was in a dangerous
condition at the time of the injury, that the injury was proximately caused by

6

the dangerous condition, [and] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred.'  In addition, the plaintiff must establish that either: (a) '[a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition," or (b) "[t]he public entity had . . . notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.'

"The Act defines a ' "[d]angerous condition" ' as 'a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.' " (*Cordova v. City of Los Angeles*, *supra*, 61 Cal.4th at p. 1105, quoting Gov. Code, § 830.)  A separate section of the Act, Government Code section 830.2, addresses the standard for minor, trivial or insignificant risks.  The *Cordova* court summarized these principles:  "Public property is in a dangerous condition within the meaning of [Government Code] section 835 if it 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself.' [Citation.]  A condition is not dangerous 'if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial, or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.' " (*Cordova*, at p. 1105, in part

7

quoting § 830.2; see also *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 233–234.)[2]

" 'Whether property is in a dangerous condition often presents a question of fact, but summary judgment is appropriate if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines that no reasonable person would conclude the condition created a substantial risk of injury when such property is used with due care in a manner which is reasonably foreseeable that it would be used.' " (*Sambrano v. City of San Diego*, *supra*, 94 Cal.App.4th at p. 234, citing Gov. Code, § 830.2; see also *Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 755 [even expert opinion on whether a given condition is dangerous does not eliminate the court's statutory task of independently evaluating the circumstances].) "This principle, referred to as the 'trivial defect doctrine' . . . is not an affirmative defense, but 'an aspect of duty that a plaintiff must plead and prove.' " (*Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 757; *Huckey*, *supra*, 37 Cal.App.5th at p. 1104.)

When a court is faced with determining whether a given condition of public property is minor or insignificant as a matter of law, it "should consider both the physical description of the condition, and 'whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract [description]

---

[2]     The California Law Revision Commission Comments to Government Code section 830.2 states that the rule originated from court decisions in cases involving dangerous conditions of sidewalks. (Cal. Law Revision Com. com., 32 pt. 2 West's Ann. Gov. Code (2012 ed.) foll. § 830.2, p. 28.) The rule was "included in the chapter to emphasize that the courts are required to determine that there is evidence from which a reasonable person could conclude that a substantial, as opposed to a possible, risk is involved before they may permit the jury to find that a condition is dangerous." (*Ibid*.)

would indicate.' [Citation.] Where appropriate, the court should consider not only the intrinsic nature and quality of the condition, but also other factors such as the time and place of the occurrence. [Citation.] 'Furthermore, the court should see if there is any evidence that other persons have been injured on this same defect.' " (*Sambrano v. City of San Diego*, *supra*, 94 Cal.App.4th at p. 234, quoting *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734.) This test reflects the "well-established principle that public entities are not insurers against injuries arising from minor or trivial defects." (*Sambrano*, at p. 240.) Further, "all of the conditions surrounding the defect must be considered in the light of the facts of the particular case. . . ." (*Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 268.) If "evidence on the issue of dangerousness leads to the conclusion that reasonable minds may differ, then summary judgment is not proper." (*Id.* at p. 271; see also *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 28.)

The rule permitting a court to determine triviality as a matter of law " 'provides a check valve for the elimination from the court system of unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property.' " (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105, fn. 3, quoting *Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 399.) Thus, it is useful to look to cases decided in the summary judgment context involving the court's consideration of sidewalk defects, including defects in height variation between panels, as here.[3]

_____

[3] Several courts have held outside the summary judgment context a sidewalk misalignment was trivial as a matter of law when the evidence was solely of the defect itself, without any surrounding aggravating circumstances or other injuries. (See *Fielder v. City of Glendale, supra,* 71 Cal.App.3d at

9

One such case is in *Huckey*, *supra*, 37 Cal.App.5th 1092, decided by our colleagues in the Fourth District, Division Two and discussed in detail by Lech on appeal.  *Huckey*, as here, involved a plaintiff who brought a negligence action against a city after he tripped and fell because "[a] concrete panel was 'lifted' in the sidewalk" between two adjoining slabs.  (*Huckey*, at pp. 1195–1196.)  The city moved for summary judgment on grounds the defect—having a height differential ranging from 9/16 of an inch to one inch without jagged or broken concrete—was trivial as a matter of law.  (*Id*. at pp. 1096–1097.)  The plaintiff in opposition argued debris as well as a light pole shadow all obscured a pedestrian's view of the defect, and these factors,

---

pp. 721, 732–734 [horizonal misalignment of approximately three-fourths of an inch that tapered to a "negligible height"; sole evidence of dangerousness was evidence of "the depth of the depression" thus reversing jury verdict in plaintiff's favor]; *Beck v. City of Palo Alto* (1957) 150 Cal.App.2d 39, 43–44 [raised sidewalk slab measuring " 'one and five-eighths inches in the center of the sidewalk, and one and seven-eighths inches at the property side," tapering to one-quarter inch on the street side, was trivial as a matter of law where "[t]here was nothing to hide the defect or obstruct the view of one approaching it," the plaintiff "tripped over it in broad daylight," and she "testified nothing distracted her attention as she approached the point where she tripped and fell"]; *Ness v. City of San Diego* (1956) 144 Cal.App.2d 668, 673 [upholding judgment notwithstanding the verdict for the city where evidence was there was an "even break" between adjoining slabs of sidewalk with a 7/8ths of an inch elevation at the time of the accident]; *Dunn v. Wagner* (1937) 22 Cal.App.2d 51, 53 [sidewalk where accident occurred had a total drop of one inch and plaintiff testified she "was perfectly familiar with the condition of the sidewalks . . . and had observed the rise on numerous occasions before the accident"; the Court of Appeal held defendant's nonsuit and judgment notwithstanding the verdict motions were improperly denied as the "claimed defect was a trivial one," which plaintiff in the use of ordinary care could have avoided].)

10

along with the height differential, showed there was a triable issue of fact as to the property's dangerous condition. (*Id.* at pp. 1097–1098.)[4]

The Court of Appeal affirmed the lower court's grant of summary judgment. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1101.) It summarized the relevant principles, then explained how to analyze a dangerous condition claim involving a sidewalk defect: "In determining whether a given walkway defect is trivial as a matter of law, the court should *not* rely solely upon the size of the defect—in this case, on the depth or height of the walkway depression or elevation—although the defect's size 'may be one of the most relevant factors' to the court's decision. [Citation.] The court should consider *other circumstances* which might have rendered the defect a dangerous condition at the time of the accident. [Citation.] [¶] These *other circumstances* or factors include whether there were any broken pieces or jagged edges in the area of the defect, whether any dirt, debris or other material obscured a pedestrian's view of the defect, the plaintiff's knowledge of the area, whether the accident occurred at night or in an unlighted area, the weather at the time of the accident, and whether the defect has caused any other accidents. [Citations.] In sum, '[a] court should decide whether a defect may be dangerous only after considering all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would suggest.' " (*Huckey*, at p. 1105 (italics added), citing

---

4      The plaintiff in *Huckey* also argued that the city in that case had a policy of beveling the sidewalk differentials depending on the height. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1098.) The court's order in this case indicates Lech made a similar argument in opposition to City's motion, but her counsel at oral argument below suggested City's policy did not constitute an aggravating factor in determining whether the sidewalk defect here was a dangerous condition. Lech does not repeat the point on appeal.

11

*Fielder v. City of Glendale, supra*, 71 Cal.App.3d at p. 734 and *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 567.)[5]

The Court of Appeal in *Huckey* agreed the city met its initial burden to demonstrate prima facie that the plaintiff could not show the sidewalk's height differential was a dangerous condition: the city's expert calculated the height differential as ranging from 9/16th of an inch to one inch, he opined that in the area pedestrians generally walked (where plaintiff likely walked) there were no broken pieces or jagged concrete edges and the defect was no more than one inch high, and the city had never received any complaints about the area or claims for trips and falls in the area. (*Huckey, supra*, 37 Cal.App.5th at pp. 1106, 1108.) Citing authorities including *Barrett v. City of*

---

[5] *Huckey* followed the analysis of the *Stathoulis* court, stating there were "two essential steps" in the analysis of a walkway defect: " 'First, the court reviews evidence regarding type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors [bearing on whether the defect presented a substantial risk of injury]. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law. . . .' " (*Huckey, supra*, 37 Cal.App.5th at p. 1105, quoting *Stathoulis v. City of Montebello, supra*, 164 Cal.App.4th at pp. 567–568.)

*Claremont* (1953) 41 Cal.2d 70, 74,[6] the court in *Huckey* stated that "[s]idewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law." (*Id.* at p. 1107.)

*Huckey* proceeded to consider the plaintiff's showing and all of the summary judgment papers, and concluded the height differential at the time of the plaintiff's fall was trivial as a matter of law. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1108.) It observed the plaintiff had not established the

_____

[6]    In *Barrett*, a case involving a claimed dangerous condition on a public sidewalk decided before the 1963 enactment of the Government Claims Act (see *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803), the California Supreme Court directed a judgment notwithstanding the verdict for a city in a case involving a sidewalk defect. (*Barrett v. City of Claremont*, *supra*, 41 Cal.2d at p. 75.) There, a plaintiff tripped on raised asphalt between two panels of a sidewalk on one of the busiest streets of the city, on which the plaintiff had "traveled . . . many times." (*Id.* at p. 74.) The ridge at its highest point was only one-half inch above the surface of the sidewalk, and "it did not rise sharply to that height but curved gradually upward from each edge toward the center, much in the same manner as a common door sill." (*Ibid.*) *Barrett* pointed to various cases involving adjoining sidewalk panels, including *Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361 involving a grade difference of "not more, and possibly less, than an inch and a half" that the *Nicholson* court assumed was dangerous and defective (*Nicholson*, at pp. 363–364 ["Assuming that the evidence will support the finding of a dangerous and defective condition by reason of the break and elevation in the concrete surface of the sidewalk, it clearly will not support the finding that 'the defendant had constructive notice of the said condition . . . .' "]) and *Balmer v. City of Beverly Hills* (1937) 22 Cal.App.2d 529, involving a height differential between sidewalk panels of one inch at one corner, decreasing to level about six or eight feet easterly. (*Balmer*, at p. 530.) The *Barrett* court held the defect in the case before it fell within the trivial category, and thus it concluded "as a matter of law, that no injury would be sustained by one exercising reasonable care in the use of the sidewalk." (*Barrett*, at p. 75.) It directed the lower court to grant a motion for judgment notwithstanding the verdict for the defendant city. (*Ibid.*)

defect was obscured from his view: his photographs lacked foundation that they showed the conditions at the time of the accident; the plaintiff did not state he had a difficult time seeing the height differential due to shadows or other conditions; and the evidence was he fell during the daytime when it was still light in dry weather. (*Id*. at p. 1109.) Thus, "the height differential would have been in plain sight and therefore, would have been avoidable to a pedestrian walking on the sidewalk and approaching the height differential 'with due care' at the time plaintiff fell." (*Id*. at pp. 1109–1110.) The appellate court reasoned: "To be sure, the height differential posed *some* risk of injury. Construed in the light most favorable to plaintiff, the record supports a reasonable inference that height differentials higher than *one-half inch* pose a trip hazard to pedestrians. But to constitute a dangerous condition, the height differential, and the area surrounding it, must have posed 'a substantial (as distinguished from a minor, trivial or insignificant) risk of injury' when "used with due care in a manner in which it is reasonably foreseeable that it will be used.'" (*Id*. at pp. 1110–1111, fn. omitted.)[7] Thus, in *Huckey*, "the entire record indisputably show[ed] that the height differential was in plain sight and did not pose a substantial risk of injury to a pedestrian using 'due care' at the time plaintiff fell." (*Id*. at p. 1110.)

---

[7] The record in *Huckey* contained deposition testimony from a City maintenance superintendent that he instructed employees to bevel height differentials higher than one-half inch. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1109, fn. 5.) Another expert stated that specified standards required height differentials higher than one half inch to be beveled. (*Ibid*.) The *Huckey* court concluded that this evidence "indicates that height differentials higher than one half inch pose trip hazards to pedestrians." (*Ibid*.) This record contains similar evidence that a City official responsible for sidewalk inspections considered height differentials greater than 3/4 of an inch to be a safety concern.

14

More recently, in *Nunez v. City of Redondo Beach*, *supra*, 81 Cal.App.5th 749, the appellate court affirmed a summary judgment in favor of a city in a case involving a claimed dangerous condition that was an upraised corner of a sidewalk slab. (*Id*. at p. 753.) The slab displacement ranged from just under three quarters of an inch to about 9/16th of an inch, and about one half inch, without cracks, jagged edges, holes or loose concrete. (*Id*. at pp. 752–754.) In opposition to the city's summary judgment motion, the plaintiff presented evidence that tree shadows fell across the left side of the sidewalk where it was raised. (*Id*. at p. 753.) The plaintiff attested she had tripped on the defect which was obscured from her view including due to the shadows, and it was a dangerous condition due to a city policy to repair offsets half an inch or greater, the existence of the shadows and continuity of the walking surface color, and her unfamiliarity with the area. (*Id*. at p. 755.)

In a partially published opinion, the Court of Appeal affirmed the summary judgment, concluding the trial court did not err in finding the defect trivial as a matter of law and that no aggravating circumstances created a triable issue as to whether it created a substantial risk of injury. (*Nunez v. City of Redondo Beach*, *supra*, 81 Cal.App.5th at p. 760.) It distinguished a case (*Laurenzi v. Vranizan* (1945) 25 Cal.2d 806) where evidence of a foot long, two and one-half inch deep, and two to six inches wide hole in a sidewalk that was obscured by vegetable debris, crates and darkness supported a jury's verdict of a dangerous condition. (*Nunez*, at p. 759.) The *Nunez* court disagreed the city's repair policy rendered the nonalignment dangerous, finding it " 'impossible to maintain heavily traveled surfaces in perfect condition,' " that nonalignments " 'inevitably occur,' " and " 'the continued existence of such [nonalignments] without warning or repair is

15

not unreasonable.' " (*Id.* at p. 758, quoting *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 929.) Contrary to *Laurenzi*, the *Nunez* court observed the plaintiff in the case before it "fell in mid-morning, on a sunny day; the sidewalk was dry with no debris covering the defect; and the defect was not obscured from view as Nunez approached it." (*Nunez*, at p. 759.) Citing *Huckey*, *supra*, 37 Cal.App.5th 1082, *Nunez* concluded: "The height differential here posed *some* risk of injury; despite her athleticism, Nunez suffered significant injuries when she tripped on it. And, the evidence, viewed in the light most favorable to Nunez, supports a reasonable inference that height differentials greater than a half inch pose a tripping hazard to walkers. But, the City does not have a duty to protect pedestrians from every sidewalk defect that might pose a tripping hazard—only those defects that create a *substantial* risk of injury to a pedestrian using reasonable care. . . . Accordingly, although the City may have thought offsets of the size here posed a tripping hazard, the evidence does not support finding the defect posed a substantial risk of injury." (*Nunez*, at pp. 759–760.)

To the contrary is *Stathoulis v. City of Montebello*, *supra*, 164 Cal.App.4th 559, involving a dangerous condition of a public walkway in a street, over which it was expected pedestrians would regularly traverse. (*Id.* at p. 567, fn. 2.) In reversing a summary judgment in a city's favor, *Stathoulis* found the circumstances surrounding the plaintiff's trip and fall on three irregularly shaped gouge marks " 'about one inch deep' " presented a triable factual issue as to dangerousness. (*Id.* at pp. 563, 568, 569.) Though it acknowledged some of the cases finding elevation differences in sidewalks of greater than one inch to be trivial as a matter of law (*id.* at p. 568), *Stathoulis* stated that "as 'the size of the depression begins to stretch beyond one inch the courts have been reluctant to find that the defect is not

16

dangerous as a matter of law.' " (*Id.* at p. 568, quoting *Fielder v. City of Glendale, supra*, 71 Cal.App.3d at p. 726.)  Though the court found the question "close" as there was no debris, no obstructions to impede the plaintiff's ability to see the street that she had never visited, it was a dry and clear evening in an area lit by streetlamps, and there were no prior complaints or injuries (*Stathoulis*, 164 Cal.App.4th at pp. 562, 568–569), it held "taken together and given the standard on summary judgment" (*id.* at p. 569), reasonable minds could differ as to whether the nature and quality of the defect presented a substantial risk of injury.  (*Ibid.*)  The gouges had existed for at least three years despite complaints about the street disrepair, and the presence of three one-inch deep gouges "may have both increased the risk of injury to a reasonably careful pedestrian, and decreased the possibility of his or her recovery (where . . . one attempting to regain one's balance after tripping in one hole is caught)."  (*Ibid.*)

### III.  *Lech's Contentions*

On appeal, Lech contends the trial court erred by ruling the sidewalk defect was trivial as a matter of law.  She argues the court reversibly erred by relying exclusively on a "tape-measure test" to assess the trivial nature of the defect, that is, by using one and one half inches as a standard so as to determine anything below that differential was trivial as a matter of law.  Setting out some of the court's remarks at oral argument on City's motion, Lech further argues the court erred by weighing evidence of aggravating factors—namely that she was unfamiliar with the sidewalk, the uplift measured more than one inch, and the uplift was obscured by shadows cast by adjacent trees—to find that the sidewalk at issue was not dangerous.  According to Lech, under a reasonable interpretation of the evidence, "a trier of fact could look at the totality of the circumstances with a defect in the

17

sidewalk measuring one and an eighth of an inch, with shadows cast over the deviation, with both Appellant and her fiancé testifying they could not see the defect due to the shadows and that they were completely unfamiliar with this sidewalk and conclude that all together, this was a dangerous condition of public property. . . . Once it is reasonable for a jury to interpret it as dangerous, it not sufficient that the court disagrees. The trial court is not the trier of fact, and all reasonable inferences should be drawn in favor of the plaintiff." Lech maintains the court, "[a]fter considering and weighing the evidence . . . concluded that it was *not persuaded* by the aggravating factors," which "is wholly inappropriate and not permitted at the summary judgment stage." She asserts because the court "moved into the role of the trier of fact," it erred.

With the exception of what a reasonable trier of fact could determine based on the admissible evidence, Lech's arguments are misplaced. As stated, we are not bound by the trial court's reasoning, which is irrelevant as this court reviews the summary judgment papers de novo. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1103.) Lech does not address whether City's evidentiary showing met its prima facie summary judgment burden or argue that its evidence failed to shift the burden to her. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849–851 [explaining summary judgment burdens]; compare, *Thimon v. City of Newark*, *supra*, 44 Cal.App.5th at pp. 756–764; *Huckey*, at p. 1097.) She does not raise any issues on appeal about the evidence of City's lack of notice or actual and constructive knowledge of the sidewalk defect. Absent such argument, we presume in favor of the judgment that City met its initial burden, including by showing it had no actual or constructive notice of the sidewalk's condition. (See *Jones v. Department of Corrections & Rehabilitation*, *supra*, 152 Cal.App.4th at p. 1376; *Tubbs v.*

18

*Berkowitz*, *supra*, 47 Cal.App.5th at p. 554.) We construe Lech's points as asserting the evidence in the summary judgment record raises triable issues of material fact as to whether the sidewalk defect was trivial so as to defeat summary judgment. We turn to that question.

IV. *Analysis*

Under the foregoing authorities, in deciding whether a particular defect is minor or trivial before allowing a jury to consider the question, a court looks not to whether there is a possible risk of injury, but whether the evidence permits a reasonable person to conclude a *substantial* risk of injury is involved when the sidewalk is used with due care in a reasonably foreseeable manner. (*Cordova v. City of Los Angeles*, *supra*, 61 Cal.4th at p. 1105; *Huckey*, *supra*, 37 Cal.App.5th at pp. 1110–1111.) Having independently reviewed the papers, including the photograph of the area at the time of Lech's fall, and construing the evidence most favorably to Lech as we must, we conclude there is a triable issue of material fact as to this question.

First, our assessment of the type and size of the defect (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105) precludes a finding that it is trivial as a matter of law. This is a sharp and abrupt, greater than one-inch rise spanning the entire length of the sidewalk, to be contrasted with the smaller, gradual or tapered elevations in *Huckey*, *Nunez*, and the cases on which they rely. (See, fn. 6, *ante*, e.g., *Barrett v. City of Claremont*, *supra*, 41 Cal.2d at p. 72 [differential of one half inch, with gradual curve upward]; *Balmer v. City of Beverly Hills, supra*, 22 Cal.App.2d at p. 530 [greatest height elevation was at a corner but decreased to level]; *Ursino v. Big Boy Restaurants*, *supra*, 192 Cal.App.3d at pp. 396–398 [parties stipulated to a height variation between sidewalk slabs of no more than three-fourths of an inch without aggravating

19

surrounding circumstances; on summary judgment, reasonable minds could not differ as to whether the defect was trivial as a matter of law]; *Caloroso v. Hathaway*, *supra*, 122 Cal.App.4th 922, 925, 927 [elevation difference in a crack within private landowner's sidewalk ranging from "zero to . . . 0.4 inches" was trivial as a matter of law].)

City relies on *Huckey*'s statement that courts have found defects of over an inch and a half to be trivial. But *Nicholson v. City of Los Angeles*, *supra*, 5 Cal.2d 361, cited by *Huckey* as involving that height differential, *assumed* a differential of "not more, and possibly less" than that height was dangerous for purposes of its analysis. (*Id.* at p. 362.) *Nicholson* did not decide such a condition was trivial as a matter of law; rather, it involved a determination of whether a city had actual or constructive notice of the sidewalk defect, and the California Supreme Court, outside the summary judgment context, held the evidence did not support such a finding. (*Nicholson*, at p. 367.) Other cases cited by City, e.g., *Beck v. City of Palo Alto*, *supra*, 150 Cal.App.2d 39 and *Dunn v. Wagner*, *supra*, 22 Cal.App.2d 51 also not in a summary judgment context (see fn. 3, *ante*) involve instances where the sole evidence of dangerousness was the size of the defect, and not other circumstances aggravating the situation.

Even were we to conclude otherwise, that no reasonable jury could find a one and one-eighth inch sidewalk rise of this sort dangerous, we must also consider " 'all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would suggest.' " (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105; *Fielder v. City of Glendale*, *supra*, 71 Cal.App.3d at p. 734.) Doing so, we disagree with City that the summary judgment record in this case contains no evidence of aggravating conditions rendering the sidewalk condition dangerous. It is true that there may be no

evidence of prior accidents, the weather was bright and sunny, and the sidewalk appears to be clean, without jagged edges or loose, broken concrete. But we cannot say the sidewalk was in "good condition" as City asserts, given the raised uplift between slabs. And, the absence of similar accidents is insufficient to show as a matter of law no dangerous condition of public property existed. (*Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337, 1346 [absence of similar accidents is relevant but is not dispositive of whether a condition is dangerous]; accord, *Stack v. City of Lemoore* (2023) ___ Cal.App.5th ___, ___ [2023 WL 3220918, at p. *8] (*Stack*); *Rodriguez v. City of Los Angeles* (1963) 215 Cal.App.2d 463, 467–468 [fact there were four prior accidents was not conclusive, though indicative of a dangerous condition].)

Further, the photograph of the location at the time of the accident shows a majority of the defect is covered by shadows from a nearby tree, and the record contains deposition testimony that the shadows made the defect difficult to see.[8]

---

8      During her deposition, Lech was asked: "Do you remember why you wanted a photograph taken of this [the sidewalk]?" She answered that she "told [her then fiancé] to take a picture of where I tripped. *I did not see it,* and I had not seen it that day after I fell. *I didn't see what I tripped over until the next day.*" (Italics added.)
        The following exchanges occurred during Lech's then fiancé's deposition:
        "Q[:]  So you think you may have taken this picture to depict the shadows?
        "A[:]  I took the picture because it was very difficult to see with the shadow, that there was something wrong."
        "Q[:]  And when you were walking along the sidewalk, did you notice any shadows obstructing the view of the sidewalk?
        "A[:]  Yes, in fact I was really puzzled myself because on the shadow, *you couldn't see it at all.*
        "Q[:]  So would you say the shadow obstructed your ability to perceive this height differential on the sidewalk?

Citing *Caloroso v. Hathaway*, *supra*, 122 Cal.App.4th 922, City argues that "[l]egally, a shadow on a sidewalk from a tree is not an aggravating factor even if the shadow obstructs the ability to see a sidewalk defect." The point is without merit. *Caloroso* held that evidence that bright, dappled light blinded the plaintiff's view of a crack in the sidewalk was "immaterial" because the "inescapable fact [was] the crack at its greatest was less than one-half inch" and thus the "disputed issues about light and shadow *in the circumstances of this case*" (italics added) did not matter. (*Id.* at p. 929.) *Caloroso* based its conclusion on the trivial nature of the defect on its size alone; it does not purport to state a categorical rule that shadows are not an aggravating factor in the context of a dangerous condition analysis. Shadowy conditions have been held an aggravating factor rendering a sidewalk elevation dangerous. (See *Johnson v. City of Palo Alto* (1962) 199 Cal.App.2d 148, 150, 152 [plaintiff tripped over a sidewalk elevation of one-half to five-eighths of an inch during her "first sojourn" in this particular direction while she was walking slowly in an area where "leaves on the trees partially shaded the [lighted] sidewalk, causing it to be shadowy"; court in upholding a judgment for the plaintiff held the question was for the trier of fact: "reasonable minds could differ as to whether or not the condition was dangerous or defective, or merely trivial"], superseded by statute on other grounds as stated in *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 831.)

Likewise without merit is City's assertion that "there is no evidence in the record that Lech's ability to see the displaced sidewalk was impaired by

---

"A[:]  I'm not 100 percent sure but I believe, yes, the shade created the advisability [*sic*]—it just wasn't as clear as when the sun would be there, you know, the shade obviously did play something in this issue, because *it was very difficult to see it*." (Italics added.)

shadows." Drawing all reasonable inferences in Lech's favor as we must (*Caloroso v. Hathaway*, *supra*, 22 Cal.App.4th at p. 929), we hold her deposition testimony that she "didn't see what I tripped over," combined with her fiancé's testimony that he "took the picture because it was very difficult to see [that there was something wrong] with the shadow" and "on the shadow, you couldn't see it at all" permits a reasonable jury to infer the defect was indeed obscured and hard to see in the shadows. Unlike *Huckey* and *Nunez* where the plaintiffs did not demonstrate the sidewalk defects were obscured from view (*Huckey*, *supra*, 37 Cal.App.5th at p. 1109; *Nunez*, *supra*, 81 Cal.App.4th at p. 759), Lech presents such evidence. City further argues "[t]he displacement is plainly visible where the shadowing is located," but we disagree. Having viewed the photograph in the record and reached our own conclusion (*Kasparian v. Avalon Bay Communities, Inc., supra,* 156 Cal.App.4th 11, 25 [reviewing court is obligated to examine anew photographs relied upon by the trial court to show a dangerous condition mindful of considerations such as focal point, perspective, timing and filtering, and reach its own independent conclusions]), we hold a reasonable jury could conclude the shadows obscured the abrupt, evenly upraised sidewalk defect to a reasonably careful person walking there.

Additionally, the evidence shows Lech was not familiar with the area, as it was her first time walking that path. As City points out, both *Huckey, supra*, 37 Cal.App.5th 1105 and *Stathoulis v. City of Montebello, supra*, 164 Cal.App.4th 559 mention a plaintiff's familiarity with or knowledge of the area as a relevant factor in the analysis of the dangerousness of a condition. (*Huckey*, at p. 1105; *Stathoulis*, at p. 567.) Other cases identify the plaintiff's knowledge of the area as a factor that "courts have considered" in the analysis. (*Nunez v. City of Redondo Beach*, *supra*, 81 Cal.App.5th at p. 758;

23

*Fielder v. City of Glendale, supra*, 71 Cal.App.3d at p. 729.) These cases include *Barrett, Dunn* and *Johnson v. City of Palo Alto,* where the courts emphasized the plaintiff's familiarity with the location. (See *Barrett, supra*, 41 Cal.2d at p. 74 [plaintiff tripped "on one of the busiest streets of the city" where she had "traveled . . . many times"]; *Dunn v. Wagner, supra*, 22 Cal.App.2d at pp. 53–54 [plaintiff "was perfectly familiar with the condition of the sidewalks . . . and had observed the rise on numerous occasions before the accident" and she could have avoided the claimed defect "by the use of ordinary care"]; *Johnson v. City of Palo Alto, supra*, 199 Cal.App.2d at p. 152 [considering it was plaintiff's first time walking the sidewalk in that particular direction as a factor in assessing dangerousness].) But City disputes that "subjective familiarity" should be considered in the analysis, citing policy concerns[9] and stating Lech cites no case in which the court actually took that factor into account in deciding whether a particular defect was trivial or dangerous.

This court has previously agreed that a court properly considered the subjective "extent of supervision that . . . a [two-year-old plaintiff] was

<hr />

[9]     City argues taking familiarity into account is unacceptable "from a legal or policy standpoint" as it "could render the exact same condition trivial to a plaintiff familiar with the area and non-trivial to a plaintiff unfamiliar with the area. . . ." Citing no authority, it maintains "[w]hether a defect is trivial depends on the defect and the objectively quantifiable surrounding circumstances, and not whether a plaintiff may or may not have previously walked on the sidewalk." It argues a contrary conclusion would effectively make it "the insurer of all its property because there will always be someone unfamiliar with areas where there exist minor defects for which the City has no duty to prevent or repair." A plaintiff's familiarity or lack thereof is but one factor to consider, among others, in deciding whether a defect is more dangerous than its size alone would suggest. Such policy arguments do not persuade us to eliminate it in considering all surrounding circumstances in the dangerous condition analysis.

receiving at th[e] moment" of her injury when she walked into a fire ring as one factor that "might have rendered the condition more dangerous . . . ." (*Sambrano v. City of San Diego*, *supra*, 94 Cal.App.4th at p. 241 [though concluding the public fire ring was not a dangerous condition as a matter of law].) We are unconvinced that a plaintiff's subjective knowledge of the area can never be a relevant factor. As stated, we must consider "all of the conditions surrounding the defect . . . *in the light of the facts of the particular case*. . . ." (*Dolquist v. City of Bellflower*, *supra*, 196 Cal.App.3d at p. 268, italics added.) When a plaintiff is familiar with a location, it can be reasonably inferred he or she will know or have reason to know about sidewalk conditions and the risks of walking over them. Conversely, a particular plaintiff's unfamiliarity with a walking path can go to whether a defect posed a *substantial* risk of injury in that particular case notwithstanding the defect's intrinsic qualities.

Just before oral argument, City notified us of new authority, *Stack*, *supra*, ___Cal.App.5th ___ [2023 WL 3220918], in which the Fifth District Court of Appeal addressed whether a plaintiff's familiarity with a particular area should be a factor in the dangerousness analysis. *Stack* was an appeal of a judgment against a city following a jury trial, not a summary judgment. (*Id*. at p. *1.) The Court of Appeal there rejected the city's arguments that a sidewalk defect (actually two defects in close proximity to each other) was not a dangerous condition as a matter of law, holding instead that reasonable minds could differ as to its dangerousness and the lower court properly left the question to the jury. (See pp. *1, 11.)

In reaching its decision, the Court of Appeal in *Stack* declined to take into account the plaintiff's extensive familiarity with the sidewalk as a factor in determining whether the condition was dangerous. The evidence was that the plaintiff was "jogging his usual route around his neighborhood" (*Stack, supra,* ___Cal.App.5th [2023 WL 3220918, at p. *1]) and had jogged over that stretch some 300 times in the past two years. (*Ibid.,* see also *id.* at p. *8.) The court "respectfully part[ed] ways with the Court of Appeal precedent weighing a particular plaintiff's familiarity with the defect as part of the dangerous condition analysis," stating, "In our view, individual familiarity is not a proper factor for consideration within the trivial defect doctrine." (*Id.* at p. *9.) It pointed out that when establishing duty in a general negligence claim, the inquiry should focus on reasonably careful users as a class, not "the particularities of the plaintiff who happens to have the misfortune of being injured by the condition." (*Ibid.*) The court found that principle reflected in Government Code section 835 case law "recognizing that a condition's dangerousness can be established even when the plaintiff did not use due care when encountering it." (*Stack,* at p. *9.) The *Stack* court characterized the cases mentioning a plaintiff's knowledge of the area as either not applying the factor, not saying which direction the factor cut, or not explaining "the import of this fact." (*Id.* at p. *10, discussing in part *Stathoulis, supra,* 164 Cal.App.4th at pp. 567–568 and *Johnson v. City of Palo Alto, supra,* 199 Cal.App.2d 148.) But Stack recognized: "Based on the plaintiff-friendly outcome of both cases, at most they might support a proposition that a plaintiff's lack of familiarity weighs against a finding of triviality. Accordingly, these cases do not persuade us of the utility of

considering a plaintiff's prior familiarity with the area where the injury occurred." (*Stack*, at p. *10.)

In our view, Stack is limited to a situation where the plaintiff is very familiar with a particular area, whereas here, Lech was not familiar with the sidewalk where she tripped. Stack is distinguishable on that basis. As explained above, we believe a plaintiff's unfamiliarity with the area in which the injury occurred can be an aggravating factor tending to establish dangerousness, as it is part of the entire circumstances of the particular case that we must take into account. (Accord, *Sambrano v. City of San Diego*, *supra*, 94 Cal.App.4th at p. 241; *Dolquist v. City of Bellflower*, *supra*, 196 Cal.App.3d at p. 268.) But even if we were to agree that a plaintiff's familiarity or lack thereof was not a proper consideration, we are still faced in this case with the size of the defect and the fact it was obscured by shadows at the time of Lech's trip and fall. It would not change our view in this summary judgment context.

In sum, we hold a reasonable jury could conclude that the size and nature of the sidewalk defect in this case—a clean, one and one-eighth inch height elevation between panels spanning the entire width of the sidewalk—combined with the fact the defect was mostly covered in shadow at the time of the incident and Lech's unfamiliarity with the area, posed a substantial risk of injury. Because the ultimate characterization of the defect cannot be determined as a matter of law, summary judgment was improperly granted.

27

## DISPOSITION

The judgment is reversed.  Plaintiff shall recover costs on appeal.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

28